IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DERRICK DANIELS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 315-007 |
| | ) | |
| LT. STRONG, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Hancock State Prison in Sparta, Georgia, brought this case pursuant to 42 U.S.C. § 1983, concerning events at Dodge State Prison ("DSP") in Chester, Georgia. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). Before the Court is Defendant's pre-answer motion to dismiss (doc. no. 33), which the Court **REPORTS** and **RECOMMENDS** be **GRANTED** and this case **DISMISSED** and **CLOSED**.

**I.  BACKGROUND**

With respect to Lt. Strong, the sole remaining defendant in this action, Plaintiff alleges the following facts.

On May 15, 2014, several inmates assaulted Plaintiff with combination locks. (Doc. no. 15, p. 3.) Plaintiff bled profusely from head wounds, suffered from dizziness, and was in pain. (Id.) After the altercation, Lt. Strong and his subordinates escorted Plaintiff to the medical

department and, without the presence of medical staff, gave him paper towels and placed his head under running water, causing pain to the head wounds. (Id.) Lt. Strong took pictures of the wounds, walked Plaintiff to segregation, and placed him in the shower, disregarding Plaintiff's complaints of pain and dizziness. (Id.) The officers told Plaintiff to strip off his clothes because they were covered in blood. (Id.) When Plaintiff continued to complain of pain and dizziness, Lt. Strong directed the officers to give him Tylenol. (Id.) Officers placed Plaintiff in a cell with another inmate who wrapped Plaintiff's head with tissue and paper towels to prevent the wounds from bleeding. (Id.) The next afternoon, Plaintiff was taken to the hospital where he received several staples to close the lacerations on his head. (Id.)

Plaintiff filed grievance number 180652 on August 29, 2014, raising the issues he describes in his amended complaint. (Doc. no. 33-2, Attch. C.) On October 1, 2014, prison officials rejected grievance 180652 for being filed out of time. (Id.) Plaintiff appealed the rejection of grievance number 180652 on October 7, 2014, and the appeal was denied on the same grounds on November 4, 2014. (Id.) Plaintiff filed no other grievances regarding the incident in his complaint. (Id., Ex. 1, ¶ 21.)

## II. DEFENDANT'S MOTION TO DISMISS SHOULD BE GRANTED BECAUSE PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES.

### A. The Legal Framework

Where, as here, Defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions. First, the Court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the

complaint is subject to dismissal for failure to exhaust administrative remedies, Defendant's motion will be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted), *cert. denied*, 555 U.S. 1074 (2008)). If the complaint is not subject to dismissal at the first step, then at step two the Court makes specific findings to resolve the disputed factual issues, with Defendant bearing the burden of proving Plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the Court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be

shown the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).[1] Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

---

[1]Other federal circuits have similarly held the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001); Lee v. Lappin, No. 04-5008, 2004 WL 1701045 (D.C. Cir. July 29, 2004); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 538 (7th Cir. 1999).

### B. The Administrative Grievance Procedure

Because the date of the alleged incident is May 15, 2014, the administrative grievance procedure applicable in this case is governed by the version of the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001, which became effective on December 10, 2012. (See doc. no. 33-2, Attch. A.) The administrative remedies procedure commences with the filing of a grievance with the inmate's counselor. SOP IIB05-0001 § VI(D)(1)-(3). The inmate's counselor forwards the grievance to the grievance coordinator, who must screen the grievance to determine whether to accept it or recommend the Warden reject it. Id. § VI(D)(3), (5)(a). The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § VI(D)(4). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id. § VI(D)(5)(b)(2). Should the grievance coordinator recommend rejection, the SOP requires the Warden give a response to the inmate's counselor to deliver to the inmate within forty calendar days of its original receipt; a onetime ten calendar day extension may be granted. Id. § VI(D)(7).

If the inmate is not satisfied with the Warden's response to the grievance, he has seven calendar days from the receipt of the response to file an appeal to the Central Office of the Commissioner; the Office of the Commissioner or his designee has one hundred calendar days after receipt of the grievance appeal to respond. Id. § VI(E)(2), (7). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. See id. § VI(E).

### C. Plaintiff's Failure to Exhaust

Plaintiff's claim should be dismissed because he failed to timely submit a grievance after the incident occurred. (See doc. no. 33-2, Attch. B.) Plaintiff had ten calendar days from the date of the incident on May 15, 2014 to file a formal grievance. SOP IIB05-0001 § VI(D)(4). Plaintiff did not file a grievance until August 29, 2014, well outside of the ten-day window. (Doc. no. 33-2, Attch. C.)

Plaintiff argues any failure on his part to exhaust his administrative remedies is due to prison officials failing to process a grievance originally filed within the ten-day period. (Doc. no. 38, p. 1.) Taking Plaintiff's factual allegations as true, in accordance with the first step of the Turner analysis, the instant complaint is not subject to dismissal, and the Court must proceed to step two of the analysis and make specific findings to resolve the factual dispute. Turner, 541 F.3d 1082-83.

Plaintiff alleges he filed a grievance within ten days for the May 15, 2014 incident, but DSP officials failed to process said grievance. (Doc. no. 38, p. 1.) Around this time, DSP officials allegedly instituted a policy denying inmates receipts showing the date the grievance was filed. (Id. at 1-2.) This alleged practice allowed DSP officials to ignore or destroy Plaintiff's timely filed grievance. (Id. at 2.) As proof of this practice, Plaintiff attaches a copy of his subsequent grievance 180652 with the receipt tear-away purportedly still attached. (Id., Ex. B.) Plaintiff also asserts he received no receipt for his most recent grievance filed on May 3, 2016 and it was "lost" in the system; however, Plaintiff's grievance history shows this grievance was filed and is pending. (Id. at 2; see also id., Ex. A.)

6

Defendant has provided evidence the grievance process was fully available to Plaintiff at all relevant times, and Plaintiff was well-practiced in utilizing it. Plaintiff's grievance history shows he filed nine grievances while housed at DSP, including five between the time of the alleged incident on May 5, 2014, and grievance 180652 filed on August 29, 2014, all of which officials processed in a timely fashion. (See doc. no. 33-2, Attch. B.) Defendant has also produced the affidavit of Nikki Fuqua, the Grievance Coordinator at DSP, detailing the grievance process. (See doc. no. 33-2, Ex. 1.) According to Ms. Fuqua, a prison counselor must give any grievance submitted by a prisoner to her. (Id. at ¶¶ 9-10); see also SOP IIB05-0001 § VI(D)(3), (5)(a). If Ms. Fuqua recommends denial, she must submit the grievance to the warden for approval. (Doc. no. 33-2, Ex. 1, ¶¶ 10, 12.)

Plaintiff provides no evidence this procedure was not followed in his case. Furthermore, Plaintiff's amended complaint and grievance 180652 fail to mention any prior non-processed grievance regarding the May 15, 2014 incident. Indeed, Plaintiff listed the sole reason for untimely filing grievance 180652 as: "I have limited access to legal material. I wish to exhaust administrative remedies." (Doc. no. 33-2, Attch. C.) Moreover, Plaintiff did not mention an unprocessed grievance when he appealed grievance 180652 to the Central Office, even though it could have served as "good cause" to excuse his grievance's untimeliness. (Id.); see SOP IIB05-0001 § VI(D)(5)(b)(2). Only when Defendant raised Plaintiff's failure to exhaust in the motion to dismiss did Plaintiff claim he filed a grievance that did not get processed.

Finally, Plaintiff's allegation prison officials are failing to give grievance receipts to inmates does not undermine the efficacy of the grievance process. Indeed, Plaintiff's own statements show that even when Plaintiff claims he was not given a receipt, his grievances were processed. (See doc. no. 36, p. 2, Ex. A.) Furthermore, while Plaintiff claims the copy of grievance 180652 he submitted as an exhibit serves as proof of prison officials failing to give receipts, there is no receipt at the bottom of this copy of the grievance, suggesting the receipt was torn off and given to Plaintiff. (Id., Ex. B.) Therefore, Plaintiff offers no tangible proof to support his assertion he filed a timely grievance that was not processed.

As Plaintiff's grievance was filed out of time, and without good cause for its untimeliness, it failed to comply with the administrative deadline and does not satisfy the exhaustion requirement. Woodford, 548 U.S. at 90; Johnson, 418 F.3d at 1159. Therefore, Plaintiff's claim is procedurally defaulted, Johnson, 418 F.3d at 1159, and Defendant's motion to dismiss should be granted. In light of the Court's conclusion Defendant's motion to dismiss should be granted due to Plaintiff's failure to exhaust his administrative remedies, it is unnecessary to address the merits of Defendant's additional arguments.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**

Defendant's motion to dismiss be **GRANTED** (doc. no. 33) and this case **DISMISSED** and **CLOSED**.

SO REPORTED and RECOMMENDED 6th day of December, 2016, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA